## BOARD OF COM'RS OF GARVIN COUNTY et al. v. DENNIS et al.

No. 19160.   Opinion Filed Sept. 10, 1929.

Rehearing Denied Dec. 3, 1929.

Blanton, Osborn & Curtis, Carrol J. Moody, Co. Atty., and Homer L. Hurt, Asst. Co. Atty., for plaintiffs in error.

O. W. Patchell and Albert Rennie, for defendants in error.

FOSTER, C.   There is but one question presented by this appeal, to wit, whether or not an assessment for benefits for drainage purposes against the unrestricted allotment of an intermarried white member of the Chickasaw Tribe of Indians is legal and binding when made while the title to the allotment remains in the original allottee and within a period of 21 years from the issuance of the patent.

The case was tried upon an agreed statement of facts.   A. B. Dennis was duly enrolled as a member of the Chickasaw Tribe of Indians as an intermarried white citizen, and received an allotment on May 18, 1908.   The board of county commissioners of Garvin county made an assessment for drainage purposes against said allotment in 1921, while still owned by A. B. Dennis, the original allottee. In 1926, he transferred the land to the other defendants in error. It is agreed that the assessment for drainage purposes was legally and regularly made pursuant to the laws of this state.

Under the provisions of the Atoka Agreement embodied in the Curtis Act of June 28, 1898 (30 Stat. at L. 505, ch. 517, sec. 29), the lands allotted to the Choctaw and Chickasaw Indians "shall be nontaxable while the title remains in the original allottee, but not to exceed 21 years from date of patent." Under this provision it was held, in the case of Choate v. Trapp, 56 L. Ed. 941, 224 U. S. 665, that the lands of the Choctaw and Chickasaw allottees were not subject to ad valorem taxes, although the restrictions upon the lands had been removed by the Act of May 27, 1908, and which further provided that "all lands from which restrictions have been or shall be removed shall be subject to taxation and all other civil burdens as though it were the property of other persons than allottees. of the Five Civilized Tribes." It was held in that case that the nontaxability of the Choctaw and Chickasaw allotments was a property right vested in the Indian, and that the same was binding upon Oklahoma and could not be abrogated by the Act of Congress of May 27, 1908; that the exemption from taxation was a separate and distinct matter from nonalienability; that the first conferred a right, and the second imposed a limitation.

Under the Choate v. Trapp Case, supra, the land involved in this action at the time the special assessment was made was not subject to ad valorem taxes. It is the contention of the plaintiffs in error, however, that the assessment for benefits for drainage is not a tax under the general acceptance of that term, and therefore the case of Choate v. Trapp does not control.

Plaintiffs in error lay stress upon that part of section 4 of the Act of May 27, 1908, which provides that the lands from which restrictions are removed shall be subject to taxation and "all other civil burdens" as though the property were owned by other persons than members of the Indian tribes, it being plaintiffs in error's contention that the special assessment is in the nature of a civil burden and not a tax.

Plaintiffs in error, to support their contention, rely upon many cases from Oklahoma and the federal courts, holding, in substance, that the local laws of Oklahoma are applicable to all citizens unless some conflict with a federal statute can be pointed out; that Indian lands from which restrictions have been removed are subject to the laws of the state of Oklahoma as to descent and distribution. Pigeon v. Stevens, 81 Okla. 180. 198 Pac. 309. That the laws concerning the leasing of lands from which restrictions

have been removed are subject to the state laws. Sperry v. Chisholm, 68 L. Ed. (U. S.) 803. That wills of even restricted Indians are subject to the state law. Blundell v. Wallace, 96 Okla. 26, 220 Pac. 40, affirmed by the United States Supreme Court in 267 U. S. 373. That unrestricted allotted lands of a deceased Indian are subject to debts arising after the removal of the restrictions. Fuller v. Holderman, 114 Okla. 136, 244 Pac. 417. That the guardianship laws of Oklahoma apply to Indians. Tucker v. Leonard, 76 Okla. 16, 183 Pac. 907.

It is plaintiffs in error's contention that the above are civil burdens and that the lands of the Indians, after restrictions are removed, are subject to all such burdens, and that the special assessment is not a tax, but a civil burden. With this contention, however, we cannot agree.

While there is a distinction between an assessment for a special benefit and a general ad valorem tax, we are inclined to believe that no distinction was intended in the treaty with the Choctaw and Chickasaw Indians, known as the Atoka Agreement, which was later embodied in the Act of Congress.

It is true that there are many cases holding that an exemption from taxation is to be taken as an exemption simply from the burdens of ordinary taxes—taxes proper—and does not relieve from the obligation to pay special assessments. Illinois Central Ry. Co. v. City of Decatur, 147 U. S. 190, 37 L. Ed. 132. And that an assessment for local improvements is not a tax in the general acceptance of the term. City of Sapulpa v. Land, 101 Okla. 22, 223 Pac. 640, and many other cases adhering to a certain doctrine.

It will be noted that, in pointing out the distinction between general taxes and assessments for local improvements, both are considered as taxes, and the courts in discussing the distinction between the two often referred to both as taxes, pointing out that there is a broad distinction, however.

It has often been held that, in the interpretation of treaties and agreements with the Indians, where doubtful expressions are used, the same will be resolved in favor of the Indians, who are wards of the government, and that an entirely different rule is applied in the interpretation of such statutes from that applied where others than Indians are involved. It has been the uniform holding of the Supreme Court of the United States from the very beginning, as stated by Chief Justice Marshall, that:

"The language used in treaties with Indians shall never be construed to their prejudice, if words be made use of which are susceptible of a more extended meaning."

It has also been the policy of our courts to interpret treaties with the Indians in the manner in which they (the Indians) understood them at the time the treaties were entered into.

Following these general principles, we believe that when the word "taxation" was used in the Atoka Agreement, it included special improvements, and was so understood by the Indians at the time.

One of the principal objects in making the lands nontaxable was to prevent the land being sold for taxes and to relieve the Indians from burdens of taxation, and certainly the same reason exists for making lands exempt from special assessments which would more quickly deprive the Indian of his title than would general ad valorem taxes.

Our attention is called to the case of Stuckey v. Kays, 119 Okla. 227, 249 Pac. 416, which holds that the allotment of a restricted Creek Indian is exempt from special assessment taxes for drainage purposes. Plaintiffs in error, however, contend that this case is not in point, because it is based upon the provision that the restricted Indian's land is inalienable, and that the assessment would be a method of forcing the Indian to alienate his property or to alienate it by operation of law. However, a part of the language in that case, which appears to support our holding in the case at bar, is as follows:

"To hold that the laws of the state are applicable to restricted Indians would not only be in contravention of the tax exemption clause of the act of Congress, but would nullify the provision declaring such lands to be inalienable for a certain period of years."

In the very recent case of Grotkop v. W. W. Stuckey et al., decided Feb. 26, 1929, modified opinion filed July 2, 1929, 140 Okla. 178, 282 Pac. 611, the assessment of a homestead allotment of a Cherokee is involved, and while the exemption clause in the treaty with the Cherokee is somewhat different from that involved in the Choctaw and Chickasaw Agreement, it was there held that a tax for special improvements upon the homestead of an unrestricted Cherokee was illegal and void. The case is not directly in point, but we think the reasoning

employed therein supports our conclusion in the case at bar.

It follows that the judgment of the trial court should be, and is hereby, affirmed.

BENNETT, TEEHEE, LEACH, and REID, Commissioners, concur.

By the Court: It is so ordered.